## STATE v. BREWER.

No. 2859.   Decided July.10, 1916  (158 Pac. 1094).

1. CRIMINAL LAW—EVIDENCE—SUFFICIENCY—AUTHENTICATION OF
   LETTER.   Whether the accused wrote an incriminating letter
   was a jury question, where he denied doing so, but two officers
   testified that he had admitted its authorship.  (Page 255.)

2. CRIMINAL LAW—CONTINUANCE—NECESSITY OF DILIGENCE—SE-
   CURING WITNESS.   Denial of accused's request for a continuance
   in order to secure a witness is not error, where no diligence
   on his part is shown.  (Page 256.)

3. CRIMINAL LAW—APPEAL—HARMLESS ERROR—REFUSING CONTIN-
   UANCE.   Denial of the continuance did not prejudice accused,
   where he testified that he had not communicated with the wit-
   ness and did not know where she was.  (Page 256.)

Appeal from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Harry Brewer was convicted of murder.  He appeals.

AFFIRMED.

*J. J. Whitaker* and *P. P. Jenson,* for appellant.

*A. R. Barnes,* Atty. Gen., and *E. V. Higgins* and *G. A. Iverson,* Asst. Attys. Gen., for the State.

McCARTY, J.

The defendant was tried and convicted in the district court of Salt Lake County of first degree murder.  From a judgment imposing the death penalty he has appealed to this court.

As disclosed by the record, over which there is no controversy, Eugene Allen, a young man, was, on the night of April 15, 1914, shot to death by a highwayman or hold-up who, at the time, in company with another person, was in the act of burglarizing a store at Bingham Canyon, this coun-

ty, known as the Miners' Mercantile Company store. It seems that the two bandits mentioned, on the night in question, came to the store, walked into a small room connected with and at the rear of the main building, and with drawn revolvers compelled an employee of the store, who happened to be in the room writing a letter, to hold up his hands. While one of the highwaymen stood guard over the employee, the other one left the room and went to another part of the building and broke a window, through which he entered the store. At this time Eugene Allen, who was an employee of the company mentioned, and two other employees were in a clubhouse, that is in close proximity to the store building, and were in a position from which they could see the window through which the highwaymen entered the store. Hearing the crash of the broken glass, Allen left the clubhouse to investigate and learn the cause of the disturbance. What then occurred until the shooting took place is related by one of the parties, a Miss Hansen who was with Allen in the clubhouse, as follows:

"Miss Christian and I were looking through the window. We stayed inside. Q. After Mr. Allen left your presence there in the club building, where did you next see him? A. With his head through the broken window—his head was all through, and I think just part of his shoulders. * * * At that instant there was a shot fired, * * * and Mr. Allen dropped from the window. * * * There was an interval, and two more shots were fired. There was some little time in fact. One shot was fired after I got outside."

The evidence shows that Allen was shot three times, and died almost instantly from the wounds inflicted. The defendant and one De Pretto were suspected of having committed the crime, and were later apprehended by the officers. De Pretto was arrested in Montana, and the defendant in Memphis, Tenn. De Pretto was tried and convicted for the crime. His case was recently before this court on appeal. *State* v. *De Pretto*, 48 Utah 249, 155 Pac. 335. The state's evidence tended to show that Brewer, the defendant, voluntarily confessed to an officer, who had him in custody, as he was being brought to Salt Lake City from Memphis, that he killed Allen

while in the act of burglarizing the store herein mentioned. Defendant testified in his own behalf, and admitted, under oath, that he voluntarily confessed to the officer that he committed the crime. When arraigned before the justice of the peace of Bingham Canyon on a charge of having killed Allen, he voluntarily and of his own violation entered a plea of guilty to first degree murder. The defendant endeavored to destroy the force of the evidence of his confession to the officer that he killed Allen by claiming that his purpose in making it was to induce the officer to remove him from Memphis, where he was held on a charge of burglary, to Utah; that he was confident when he arrived in Utah the officers would discover that he was not the man wanted for the killing of Allen, and that he would be taken back to Memphis, and on his way back he might see an opportunity to escape from the officers. The evidence for the state tends to show that the defendant, while in the county jail awaiting trial, wrote a letter addressed to a "Mr. Tim Headly, Great Falls, Montana." The letter was intercepted by the officers who had the defendant in custody and is as follows:

"Dear Friend: I hope this will catch you I am in a hell of a shape and the only chance I got to save my neck is to beat the joint if you can locate Lou and tell him to come up here and take me out that is the only chance I got the way to do it is to stick the joint up at night there is only two men on at night I am on first north in number 20 in the county jail not that I am afraid to die but I hate to have these guys git the best of me. Well Tim do the best you can for me, and you will never loose if you come down talk it over with Barrey he may show you some way.                    Whitey."

The evidence shows—in fact the defendant testified—that while he was in the county jail awaiting trial he occupied, was confined in, cell No. 20. This letter (State's Exhibit 3) we shall refer to later.

Frank De-Pretto, the alleged accomplice of defendant in the commission of the crime in question was called as a witness by the defendant, and testified in the case. De Pretto claimed that he had never met the defendant prior to the time of his arrest, and that he (De Pretto) was not in Bingham Canyon

at the time the crime in question was committed; that he was not in the state of Utah at that time. On cross-examinaion he admitted that while he was in the county jail awaiting trial he wrote a letter addressed to friends and relatives of his, wherein he stated, among other things:

"They are going to hang me as sure as you are a foot high, so there is no use in you people going to any expense for me at all. * * * I will tell you about this case. We were blowing up a safe in Bingham Canyon, Utah, and one fellow would not obey orders, and my partner killed him. We were trying to get $15,000 for ourselves, but we made a failure of it."

This letter was evidently offered and admitted in evidence for the purpose of impeaching the witness and thereby weakening the force of his testimony, wherein he claimed he was not in this state when the crime was committed. It is not claimed, nor could it be successfully urged, that the evidence is insufficient to justify the verdict. The confessions of guilt made by the defendant, considered in connection with other incriminating facts and circumstances in evidence, abundantly support the verdict of the jury.

The appeal is based on two assignments only. One assignment relates to the admission in evidence of the letter, Exhibit 3, hereinbefore mentioned. When the letter was offered and admitted in evidence objection was made, and counsel now contend that the evidence is insufficient to connect the defendant in any way with the writing of the letter, or to show that it was written in his behalf or with his consent or knowledge. We do not agree with counsel. One of the officers who had the defendant in custody testified in part that after the letter was intercepted he had a conversation with the defendant about the letter. The witness said:

"I had the letter in my hand. * * * I asked him why he wrote this letter. He said, 'You can't blame a man for trying to beat it if he can.' "

Another officer testified that he had an interview with the defendant about the letter, and that the defendant said:

"I am sorry I sent that letter, and I don't want to get any-

body into trouble. I don't want them to come down here. From now on you won't have any more trouble with me.''

The defendant denied that he had these conversations with the officers, and further testified that he never saw the letter, and did not know of its existence until it was produced in court. The most that can be claimed for his testimony on this point is that it created a conflict in the evidence and raised an issue of fact which was for the jury to determine. This assignment is therefore overruled.

When the case was called for trial, June 18, 1915, defendant interposed a motion for a continuance, supported by his affidavit, in which he averred that he was not ''prepared to go to trial on said day, nor will he be for 30 days 2, 3 at least from date, for the reason that one Daisy Hazzard, a resident of Memphis, Tenn., an important witness for the defendant, is not within the state of Utah,'' and that— ''if this trial is postponed for thirty days, he can prove by, and the said witness, Daisy Hazzard will so testify, that affiant was not in the state of Utah on the 15th day of April, but was in company of said Daisy Hazzard in British Columbia.''

No claim was made that defendant had used due, or any, diligence to procure the attendance of the witness mentioned in the affidavit, nor does it appear that he made any effort to take or obtain her deposition. The record shows that the court, on May 1, 1915, made an order, setting the case for trial June 14, 1915. No claim is made that defendant and his counsel were not advised of this order at the time it was made. The court overruled the motion for a continuance. On June 21, 1915, the case was again called for trial, and defendant interposed another motion for a continuance, supported by affidavit in which he reiterated the facts set forth in his former affidavit and further averred:

''That affiant has used every possible means and diligence to have said Daisy Hazzard present at this time; that a short time since the said Daisy Hazzard left her home in Memphis, Tenn., for a trip to New Orleans; that affiant has written three urgent letters to have the said Daisy Hazzard come to Salt Lake City to this trial; that the said Daisy Hazzard has

promised and agreed to be here at this trial by letter; * * * that as soon as affiant was certain that the trial would be set and called for this time, affiant has sent telegrams to the said Daisy Hazzard, and has received a telegram from her, while affiant was confined in the state prison in this county, that she could be here when notified; that affiant has been unable, since learning of the calling of this case for last Friday, to reach said Daisy Hazzard.''

The court overruled the motion. This ruling is assigned as error. As stated it is not claimed, and the record does not, show, that defendant used any diligence whatever to procure the attention of the witness. Moreover, the defendant, while testifying in his own behalf, stated on cross-examination that he never wrote a letter to the witness; never received a letter from her; never sent a telegram to her; and never received a telegram from her, as stated in his affidavit. And he further testified that he did not ''know whether Daisy Hazzard was in Memphis, Tenn., before this trial came up or not,'' and that he ''didn't know anything about where she was.'' It follows, therefore, from defendant's own testimony that the overruling of the motion for a continuance could not possibly have deprived him of a substantial, or any, right.

The judgment is affirmed, with directions to the trial court to fix a day for carrying the judgment into effect.

STRAUP, C. J., and FRICK, J., concur.